**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

JENNA FINNEY,

       Plaintiff,

  v.

CADIA HEALTHCARE, LLC, a Delaware limited liability company,

       Defendant.

C.A. No. 19-1138-RGA-JLH

**MEMORANDUM OPINION**

William D. Fletcher, Jr., Gary E. Junge, SCHMITTINGER & RODRIGUEZ, P.A., Dover, Delaware. Attorneys for Plaintiff.

Krista M. Reale, MARGOLIS EDELSTEIN, Wilmington, Delaware. Attorneys for Defendant.

April 16, 2021
Wilmington, Delaware

**JENNIFER L. HALL, U.S. MAGISTRATE JUDGE**

Plaintiff Jenna Finney ("Plaintiff") filed a three-count Amended Complaint asserting claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Delaware Persons with Disabilities Employment Protections Act ("DPWEPA"), 19 Del. C. § 720, *et seq*. Her former employer, Defendant Cadia Healthcare, LLC ("Cadia"), has moved for summary judgment on the FMLA claim. (D.I. 33.) For the reasons stated below, Cadia's motion is DENIED.[1]

## I.    BACKGROUND[2]

### A.    Cadia

Cadia provides rehabilitation and other healthcare services at various locations, including at its "Capitol" facility in Dover, Delaware. Plaintiff was employed by Cadia for more than eighteen years. At the time of her termination, Plaintiff worked as a Skilled Unit Manager in the Skilled Nursing Unit at Capitol. (D.I. 34, Ex. B at 21:1-4, 42:20-43:21.)

Cadia has an employee handbook that it provides to its employees. It contains information about work expectations and disciplinary procedures. (D.I. 34, Ex. F.) The handbook lists three types of offenses that are subject to progressive disciplinary action: Minor/Type C; Major/Type B; and Critical/Type A. (*Id.* at 23-25.) Included among the Major/Type B offenses is a failure to "[p]erform in relation to the requirements of the job, including complying with any applicable regulatory standards or laws . . . ." (*Id.* at 24.) According to the handbook, employees who commit

---

[1] The parties consented to the magistrate judge deciding and entering a final order on the motion. (D.I. 40.)

[2] The facts set forth in this section are drawn from record evidence. For purposes of resolving Cadia's motion for summary judgment, I view the evidence in the light most favorable to Plaintiff, as the non-moving party. Neither party has objected to the other party's cited material on the basis that it "cannot be presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2).

a Major/Type B offense are subject to a "final written warning," and employees who commit a second such offense within "one year" are subject to termination. (*Id*.) The handbook states that "[w]hen an employee violates a policy or work rule that could result in termination, that employee will be suspended without pay while the facts are being investigated." (*Id.* at 26.)

The parties do not dispute that in-patient rehabilitation facilities, like the one Plaintiff worked at, were required to comply with certain state regulations. For example, the facility was required to complete a "fall assessment" for new patients. (D.I. 34, Ex. B at 108:9-109:1; D.I. 34, Ex. H at 7:12-8:3.) The facility was also required to test new admissions for tuberculosis by administering two PPD tests seven days apart. (D.I. 34, Ex. B at 118:16-122:22; D.I. 34, Ex. E at 21:10-22:9; *see also* D.I. 34, Ex. G.) If a facility failed to perform a fall assessment or the two PPD tests within a certain period of time after a patient's admission, the facility could be cited by the state. (D.I. 34, Ex. B at 108:18-109:1, 119:7-18.) As the Skilled Unit Manager, Plaintiff was responsible for ensuring that all patients admitted to her unit received those tests. (*Id.* at 110:3-111:13, 115:8-116:1, 122:4-11; D.I. 34, Ex. E at 14:18-24.)

**B.     Plaintiff's FMLA Leave**

Plaintiff suffers from trigeminal neuralgia, which causes her to experience severe facial pain on one side of her face. (D.I. 34, Ex. B at 95:6-13.) As a result of her health condition, Plaintiff requested, and Cadia approved, FMLA leave from July 12, 2018 until July 30, 2018. (*Id.* at 100:12-20.)

While Plaintiff was on leave, inspectors from the State of Delaware conducted a surprise survey to assess Cadia Capitol's compliance with government regulations. (*Id.* at 98:8-99:16.) Plaintiff's supervisor, Patricia Leidy, telephoned Plaintiff while she was on leave. Ms. Leidy told Plaintiff that she "need[ed] to make herself available . . . in case [Plaintiff's subordinates] have

any questions or [she] can answer anything for them." (*Id.* at 47:2-16, 99:21-100:5; 148:4-149:15.) Plaintiff received "multiple calls" from her subordinates while she was on leave. (*Id.* at 100:6-7.)

   **C.**  **Plaintiff's Return from FMLA Leave and Subsequent Termination**

When Plaintiff returned to work on Monday, July 30, 2018, Ms. Leidy "had a different attitude with [Plaintiff]" and "[s]he made it known that she wasn't happy that [Plaintiff] wasn't there during the State survey." (*Id*. at 136:1-8, 148:4-21; 149:10-15.) Ms. Leidy told Plaintiff, among other things, that she "had left them high and dry during the State survey." (*Id.* 148:11-17.) Plaintiff was also informed that she would have to work an additional overnight shift on Friday, August 3, 2018, despite the fact that Plaintiff was not the employee who was scheduled to be "on call" that day. (*Id.* 101:17-24; D.I. 35-1, Ex. B) One of Plaintiff's coworkers sent Plaintiff a text message suggesting that Cadia had required Plaintiff to work the extra shift because "[t]hey were pissed [Plaintiff] w[as] out on fmla" during the state inspection. (D.I. 35-1, Ex. C.)

On Monday, August 6, 2018, Plaintiff was suspended from work and, on August 9, 2018, Ms. Leidy issued Plaintiff a Progressive Discipline Form charging her with (1) failing to ensure that patients' fall assessments had been completed and (2) failing to ensure that PPD tests had been administered on time. (D.I. 34, Ex. B at 116:15-18, 131:1-132:18; D.I. 34, Ex. I.) The missing fall assessments related to patients who were admitted to Cadia Capitol during the time that Plaintiff was on FMLA leave. (D.I. 34, Ex. B at 115:8-117:7; D.I. 34, Ex. I.) And, although it was Cadia's practice to assign another manager to review patients charts for compliance if the manager responsible for a particular unit was "out," Cadia had not done so while Plaintiff was on leave. (D.I. 34, Ex. B at 115:8-117:7; D.I. 34, Ex. E at 43:10-44:9; D.I. 34, Ex. H at 10:23-11:21.)

Instead, Plaintiff returned from leave to find "piles of stuff" (*i.e.*, work) "that wasn't done when [Plaintiff] was out." (D.I. 34, Ex. I.) At the time of Plaintiff's suspension (a week after her

4

return to work), she had not yet had time to review all of the charts for the patients who had been admitted while she was on leave. (*Id.*)

As for the alleged late PPD tests, the problem stemmed from a software bug in Cadia's medical records system. (D.I. 34, Ex. B at 124:15-126:24; D.I. 34, Ex. I.) As a result of the bug, the data field for the follow-up PPD test sometimes failed to auto-populate correctly. (*Id.*) Prior to August 9, 2018, Plaintiff had never spoken directly to Ms. Leidy about the software issue; however, Plaintiff had "reported [the issue] several times" to her previous supervisor and "[e]verybody" at Cadia Capitol knew about it. (*Id.* at 126:1-18, 128:5-14; *see also* D.I. 35-1, Ex. A at 13:10-17:12.) "[C]orporate was aware of it" as well. (D.I. 34, Ex. B at 124:24-125:4.)

The August 9, 2018 Progressive Discipline Form issued by Ms. Leidy charged Plaintiff with violating "CATEGORY OF WORK RULE . . . Major/Type B" and indicated that the "LEVEL OF PROGRESSIVE DISCIPLINE" was "Termination." (D.I. 34, Ex. I.) Cadia's chosen penalty of termination for the alleged Major/Type B offense was consistent with the progressive discipline guidelines set forth in Cadia's employee handbook, as Plaintiff had been issued a "final written warning" for a Major/Type B offense in June 2018, less than a year before. (D.I. 34, Ex. B at 69:12-70:21, 94:3-95:2; D.I. 34, Ex. D; D.I. 34, Ex. F. at 22-24.)

## II.     LEGAL STANDARD

A party may move for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the movant to demonstrate the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

"An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials,' or by 'showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" *Resop v. Deallie*, No. 15-626-LPS, 2017 WL 3586863, at *2 (D. Del. Aug. 18, 2017) (quoting Fed. R. Civ. P. 56(c)(1)(A) & (B)). A factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### III. DISCUSSION

The FMLA allows eligible employees to take leave from work to attend to their own medical conditions. 29 U.S.C. §§ 2612(a)(1), 2614(a)(1)(A)-(B); *see also* 29 C.F.R. §§ 825.100, *et seq.* The FMLA and its implementing regulations prohibit employers from interfering with, restraining, or denying FMLA benefits or discharging or discriminating against individuals for opposing practices made unlawful by the FMLA. 29 U.S.C. § 2615(a)(1)-(2); 29 C.F.R. § 825.220. There are two types of claims that an aggrieved employee can bring under the FMLA: retaliation and interference. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3d Cir. 2012). In this case, Plaintiff presents both.

The Court must determine whether the undisputed facts demonstrate as matter of law that no FMLA interference or retaliation claim could succeed. If there are any genuine disputes of material fact, the Court must deny summary judgment.

### A.   FMLA Interference

To make a claim of interference under the FMLA, a plaintiff must establish:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014) (quoting *Johnson v. Cmty. Coll. of Allegheny Cty.,* 566 F. Supp. 2d 405, 446 (W.D. Pa. 2008)). Cadia's motion for summary judgment only challenges the fifth element: it argues that Plaintiff cannot show that she was denied benefits to which she was entitled under the FMLA. In order to establish that element, Plaintiff must "show that FMLA benefits were actually withheld." *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 156 (3d Cir. 2017) (internal quotes omitted).

Cadia argues that summary judgment should be granted in its favor because Plaintiff was never denied the ability to take FMLA leave. Cadia points to Plaintiff's admission at deposition that she was "[n]ever denied FMLA." (D.I. 34 at 10-11 (citing D.I. 34, Ex. B at 100:21-22).) I am not persuaded, however, that a layperson's answer to an ambiguous deposition question demonstrates, as a matter of law, that Cadia did not "interfere" with Plaintiff's rights under the FMLA.

The record reflects that Cadia did not deny Plaintiff's request to take FMLA leave, but that does not answer the question of whether Cadia interfered with Plaintiff's rights under the FMLA while Plaintiff was on approved FMLA leave. Unfortunately, neither party cited any case

7

addressing whether an interference claim can be maintained when an individual was required to, and did, field calls from work while on approved FMLA leave. Courts considering the issue have reasoned that the success of such a claim depends on what the employer asked the employee to do. *See Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1158–59 (8th Cir. 2016) (collecting cases); *Hall v. Bd. of Educ. of City of Chicago*, No. 14-CV-3290, 2018 WL 587151, at *6 (N.D. Ill. Jan. 29, 2018). "For purposes of summary judgment, courts have drawn the line along a distinction between, on the one hand, receiving nondisruptive communications such as short phone calls requesting the employee to pass on institutional knowledge or property as a professional courtesy, and, on the other, requiring the employee to complete work-related tasks or produce work product." *Massey-Diez*, 826 F.3d at 1158–59.

Having reviewed the record, I conclude that there is a genuine dispute of material fact as to whether, and to what extent, Plaintiff was required to perform work-related tasks while out on approved FMLA leave. The factfinder should determine whether Plaintiff was in fact contacted while on leave and whether that contact was significant enough to constitute a work-related task.

Accordingly, Cadia's motion for summary judgment on Plaintiff's FMLA interference claim is DENIED.

### B.     FMLA Retaliation

To prevail on her retaliation claim, Plaintiff must "prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein*, 691 F.3d at 301–02. Cadia's motion only challenges the third element: it argues that Plaintiff lacks sufficient evidence to raise a genuine dispute of material fact as to whether her termination was causally related to her FMLA leave.

The parties agree that the question of causation may be assessed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). (D.I. 34 at 13; D.I. 35 at 12.) *See Ross*, 755 F.3d at 193; *Lichtenstein*, 691 F.3d at 302.[3] Under that framework, a plaintiff must first establish a prima facie case of discrimination. *Ross*, 755 F.3d at 193. To do so, she "must point to evidence sufficient to create an inference that a causative link exists between her FMLA leave and her termination." *Lichtenstein*, 691 F.3d at 307. If the plaintiff succeeds, the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* The burden then shifts back to the plaintiff to demonstrate that the articulated reason was pretextual. *Id.*

The evidence of record—viewed in the light most favorable to Plaintiff—demonstrates a *prima facie* case of retaliation. Plaintiff worked at Cadia for eighteen years and served as a supervisor. One week after Plaintiff returned from FMLA leave, Plaintiff was suspended and subsequently issued the Notice of Discipline resulting in her termination. The temporal proximity of Plaintiff's return from leave and her termination is sufficient to establish a *prima facie* case. *See Lichtenstein*, 691 F.3d at 307 (collecting cases).

The parties do not dispute that Cadia has articulated a legitimate, non-discriminatory reason for terminating Plaintiff. According to the August 9, 2018 Notice of Discipline, Plaintiff failed to "perform[] in relation to the requirements of the job" because she failed to ensure that fall assessments and PPD tests were timely completed in accordance with state regulations. (D.I. 34, Ex. I.) Because the Notice of Discipline was Plaintiff's second Major/Type B warning within a year, the choice of penalty was consistent with the Cadia employee handbook.

---

[3] Because Plaintiff's claim survives summary judgment when analyzed under the *McDonnell Douglas* framework, I need not address Plaintiff's argument that she would also survive summary judgment under a mixed-motive framework.

That leads to the final burden shift: Plaintiff must demonstrate that Cadia's proffered non-discriminatory reason for her termination is pretextual. "To defeat a motion for summary judgment, a plaintiff must point to some evidence from which the 'factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Alred v. Eli Lilly & Co.*, 771 F. Supp. 2d 356, 370 (D. Del. 2011) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). To discredit a defendant's stated reason for termination, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Cadia's] proffered legitimate reason for its action that a reasonable fact finder could rationally find them unworthy of credence." *Naber v. Dover Healthcare Assocs., Inc.*, 765 F. Supp. 2d 622, 639 (D. Del. 2011) (internal quotations omitted), *aff'd,* 473 F. App'x 157 (3d Cir. 2012).

Plaintiff has provided sufficient evidence of pretext to survive summary judgment. There is no dispute that Plaintiff was terminated as the result of Ms. Leidy's issuance of a Notice of Discipline less than two weeks after Plaintiff returned from leave. But, while the Notice of Discipline cited Plaintiff's failure to ensure that admitted patients were timely given fall assessments and PPD tests, there is evidence in the record supporting an inference that the cited reasons were pretextual. Specifically, there is evidence that the patients that lacked fall assessments were admitted to Cadia Capitol while Plaintiff was on FMLA leave and that the assessments weren't timely completed because Cadia failed to assign someone to cover Plaintiff's duties while she was away. There is also evidence that the alleged PPD testing errors were the result of a computer software glitch that "everybody," including management, was aware of. The record also contains evidence that that Ms. Leidy was unhappy that Plaintiff took FMLA leave.

All of that evidence, viewed together and in the light most favorable to Plaintiff, create a genuine issue of material fact as to whether the charges set forth in the Notice of Discipline were pretextual.

Cadia's motion for summary judgment on Plaintiff's FMLA interference claim is therefore DENIED.

### D.     Remaining Claims

Plaintiff stipulated to the dismissal of her remaining (ADA and DPWEPA) claims, and the Court dismissed them on April 13, 2021.  (D.I. 50, 51.)

### IV.    CONCLUSION

For the reasons set forth above, the Court will deny Cadia's motion for summary judgment on the FMLA interference and retaliation claims.